IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES DAVIS, et al., individually and on behalf of other similarly situated persons, | ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 04-0956-CV-W-FJG |
| | ) | |
| NOVASTAR MORTGAGE, INC., et al., | ) | |
| Defendants. | ) | |

# AMENDED ORDER[1]

Pending before the Court is plaintiffs' Motion for Conditional Certification of Case as Collective Action and for Expedited Court-Supervised Notice to Similarly Situated Employees (Doc. No. 78). Plaintiffs request authorization to send notice of this pending collective action under the Fair Labor Standards Act to all current and former employees of NovaStar Mortgage, Inc., NovaStar Home Mortgage, Inc. and NovaStar Financial, Inc. (collectively "NovaStar" or "Defendants") who worked as a loan originator[2] at any time from June 2001 to June 2004. In addition, Plaintiffs request that this Court order Defendants to provide Plaintiffs the names and current or last known addresses and telephone numbers for each such current or former employee in order to facilitate notice.

---

[1] The Court enters this amended order to correct clerical errors made in its previous Order (Doc. No. 139).

[2] The parties appear to interchangeably use the terms "loan officer" and "loan originator" in their briefs. As the Court is uncertain as to which term accurately identifies the employees who are potential plaintiffs in this suit, the Court will use the term "loan originator" throughout, with the understanding that this term refers to both "loan officers" and "loan originators."

I.  BACKGROUND

This is a Section 16(b) collective action brought on behalf of current and former loan originators employed by NovaStar Mortgage, Inc. ("NMI"), NovaStar Home Mortgage, Inc. ("NHMI"), and NovaStar Financial, Inc. ("NFI").[3]  Plaintiffs allege that the NovaStar defendants failed to properly pay loan originators minimum wage and overtime compensation, and failed to keep accurate records reflecting the number of hours loan originators worked.

II.  FACTS

The NovaStar family of companies are NovaStar Financial, Inc. ("NFI"), NovaStar Mortgage, Inc. ("NMI"), and NovaStar Home Mortgage, Inc. ("NHMI"). NFI, a Maryland corporation, is the publicly traded parent company of NMI and NHMI. NMI, a Virginia corporation, is a wholesale lender that focuses on providing a wide array of non-conforming loan products. NHMI, a Delaware corporation, is a retail branch organization of affiliated mortgage brokers with a network of locations nationwide. All three entities share the same corporate headquarters at 8140 Ward Parkway, Kansas City, Missouri 64114. The NovaStar family of companies also share common ownership, common officers and directors, and a common human resources department. (See Exs. F and G to Doc. No. 79; Depo. of Rodney Schwatken, NovaStar's Vice President and Controller, 11:1-12:13, 15:12-

---

[3]The parties represent that plaintiffs' claims against NHMI were resolved at mediation on June 12, 2005 (after the date of the filing of this motion).  In plaintiffs' reply in support of this motion, plaintiffs withdrew their motion to conditionally certify a class with respect to individuals employed by NHMI.  See Doc. No. 119.  Therefore, this Court will only consider whether conditional certification is proper as to a class of plaintiffs employed by NFI and/or NMI.

15:22, 22:4-23:12, 26:7-31:21). However, NMI and NHMI maintain separate locations throughout the United States.

NMI employs approximately 120 loan originators. Plaintiffs allege that all loan originators employed by NovaStar over the last three years had essentially the same job duties: to originate or procure loans and sell the financial products of NovaStar. If a customer was interested in obtaining a loan, a loan originator would collect information to complete a loan application and then forward the application to an underwriting department for an approval decision. NovaStar loan originators did not have final authority or discretion to approve or disapprove a loan. (See employee declarations, attached to Doc. No. 79; Depo. of Paul Bradley, NovaStar's Vice President of Retail Sales, 26:10-28:20, 32:22-33:4, 50:10-53:2).

NovaStar loan originators commonly worked overtime hours on a weekly basis and were not paid for this overtime prior to July 2004. (See employee declarations, attached to Doc. No. 79; see also Depo. of Lance Anderson, NFI's President and Chief Operating Officer and NMI's President and Chief Executive Officer, at 30:14-17, Ex. 4 to Doc. No. 119; defendants' opposition, Doc. No. 112, at p. 12 (admitting that their own evidence reveals that loan originators worked an average of 2.5 hours of overtime per week).) Until approximately July 2004, loan originators were not required to accurately record the time they worked, and NovaStar failed to maintain accurate time records as required by the FLSA. (See Doc. No. 79, Julian Decl., ¶ 4; Depo. of Scott A. Stone, Director of Employee Relations for NovaStar, 145:10-145:12, 147:6-147:14). Prior to July 2004, all loan originators in the NMI division were classified as exempt under the FLSA. (See Anderson

3

Depo. at 30:10-13; Stone Depo. at 7:13-15.)

In or around June of 2004, NovaStar reclassified all individuals employed as loan originators as non-exempt. Plaintiffs state that NovaStar represented to its work force that the Department of Labor revised the FLSA to make loan originators non-exempt. Plaintiffs' position, however, is that the DOL's new regulations only codified existing law, and NovaStar deliberately misinformed its loan originators regarding their entitlement to overtime compensation and backpay. NovaStar's Director of Employee Relations and corporate representative admits that the company took "license" in its communications to employees regarding the reclassification of loan originators from exempt to nonexempt. (See Doc. No. 79, Depo. of Scott A. Stone, 201:1-201:10.)

NovaStar senior executives specifically considered, but ultimately rejected, the idea of paying NovaStar loan originators backpay for the substantial overtime hours they had worked prior to the reclassification in June 2004. (See Doc. No. 79, Stone Depo. 7:13-7:15, 134:25-135:10, 136:20-136:25, 140:11-141:14, 142:5-142:17, 144:23-145-12, 147:6-147:14, 159:20-160:5, 185:22-186:1, 198:10-202:18; Exs. H, I, J and K).

Plaintiffs state that they and the other loan originators in the NMI division are similarly situated because they perform the same essential job duties and are common victims of Defendants' company-wide policy and practice to mis-classify these employees as exempt in order to deny them overtime compensation.

III. STANDARD

Section 216(b) provides that a FLSA action may be brought by an employee for himself and on behalf of "other employees similarly situated." A collective action under the

4

FLSA differs significantly from a Fed. R. Civ. P. 23 class action in that a similarly situated employee does not become a plaintiff (and is not bound by a subsequent judgement) in a case proceeding under § 216(b) "unless he gives his consent in writing to become such a party" and files a consent in the court where the action is pending. 29 U.S.C. § 216(b). In other words, a party needs to "opt-in" to a collective action under the FLSA, whereas a party would need to "opt-out" of a class action proceeding under Rule 23.

In order to determine whether potential opt-in plaintiffs are "similarly situated" for purposes of § 216(b) analysis, federal district courts have used varying standards. Notably, the Eighth Circuit Court of Appeals has not spoken regarding the standard that should be used by district courts therein, and no reported cases from the Western District of Missouri examine the appropriate standard for determining whether plaintiffs are "similarly situated." However, this Court has utilized the two-step approach advocated by plaintiffs in a previous case. See Boyle v. Barber & Sons, Co. Case No. 03-0574-CV-W-FJG (W.D. Mo., May 21, 2004) (Order granting plaintiffs' motion for conditional certification of collective action). See also Garner v. Regis Corp., Case No. 03-5037-CV-SW-SWH (W.D. Mo., Aug. 5, 2004)(Order granting plaintiffs' motion for conditional certification of collective action). This approach is utilized in the majority of reported district court cases. See Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 568 (N.D. Ala. 1995); Thiessen v. General Electric Capital Corp., 996 F.Supp. 1071, 1080 (D. Kan 1998). See also Bartleson v. Winnebago Indus., Inc., 2003 WL 22427817, *4 (N.D. Iowa, October 24, 2003) (stating that "[c]ourts uniformly have found the Rule 23 factors for 'opt-out' class actions to be inapplicable to the FLSA's 'opt-in'

requirement," and citing numerous cases from outside the Eighth Circuit).

This approach provides for a two-step determination as to whether class certification is proper. First, plaintiff moves for conditional certification at an early stage in the litigation, wherein a class is certified for notice purposes. Then, at the second step, defendants are allowed the opportunity to move for de-certification at the close of discovery. See Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 678 (D. Colo. 1997)(quoting Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1998)).

According to this line of cases, conditional certification at the notice stage requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." Id. See also Schwed v. General Electric Co., 159 F.R.D. 373, 375 (N.D.N.Y. 1995) (providing that plaintiff only needs to provide some factual basis from which the court can determine if similarly situated plaintiffs exist); Heagney v. European American Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (stating that a plaintiff only needs to describe the potential class within reasonable limits and provide some identifiable factual basis from which the court can determine if similarly situated plaintiffs exist). After completion of discovery, the court makes a factual determination as to whether the members of the conditionally certified class are similarly situated. See Lusardi, 118 F.R.D at 359.

IV. ANALYSIS

Plaintiffs state that the record before this Court unquestionably establishes the following facts demonstrating that the proposed class of loan originators in the NMI division are similarly situated:

6

- All loan originators in the NMI division were classified as exempt prior to July 2004.
- All loan originators in the NMI division have the same job duties.
- Loan originators worked overtime in excess of forty hours a week and were not paid for this overtime.
- Prior to July 2004, loan originators did not keep time records.

Plaintiffs also allege and provide evidence supporting their assertion that classification of loan originators as exempt was part of a company-wide plan with respect to employee compensation. Plaintiffs note that the treatment of loan originators was the same throughout the NovaStar family of companies, regardless of the geographic location of the branch office where each employee worked. Plaintiffs state they have sufficiently demonstrated, for purposes of conditional certification of collective action, that all loan originators employed by NovaStar performed the same essential job duties and are common victims of Defendants' company-wide policy and practice to mis-classify these employees as exempt in order to deny them overtime compensation.

Plaintiffs state that a further factor weighing in favor of § 216(b) notification is that several loan originators have chosen to join in the case prior to issuance of notice. So far, 19 NovaStar loan originators have elected to join this case (two of whom have settled their claims against defendants). Plaintiffs state that the fact that a significant number of consents have been filed prior to the issuance of notice is a strong indication that there are similarly situated individuals who desire to opt in. See Dybach v. State of Florida Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991); Realite v. Ark Rests. Corp., 7 F.Supp.2d 303, 308

(S.D.N.Y. 1998).

Defendants counter that the plaintiffs are not similarly situated in that (1) the declarations submitted by plaintiffs are somehow inadequate or insufficient because defendants' attorney believes the declarations are inaccurate or incredible; (2) other than a "couple of declarations" made by plaintiffs, there is no evidence that any plaintiff was told to work off the clock by the NovaStar defendants; and (3) there is no evidence that NMI loan originators working outside of Kansas City were ever asked to or compelled to work off the clock.

First of all, the Court wishes to remind defendants that their counsel's unsupported opinion as to the credibility of plaintiffs is <u>irrelevant</u> in the Court's analysis of the issues presented in plaintiffs' motion. See Exhibit to Doc. No. 112, Declaration of Christopher M. Bissonnette in Support of Defendants' Opposition to Plaintiffs' Motion to Conditionally Certify Class Action Complaint, ¶ 6 ("[I]t is my belief that the claims for overtime are wildly inflated and unsupported by the tasks each deponent testified to."); ¶ 8 ("Additionally, the claims of excessive overtime are so far out of line with a standard workweek as to be unbelievable."). Credibility of plaintiffs is an issue for the trier of fact. In their reply brief, the plaintiffs ask the Court to strike or disregard the characterizations of fact/opinions made by defendants' counsel in his declaration. The Court agrees with plaintiffs that the characterizations of fact or opinions of defendants' counsel should be disregarded, and therefore the Court will do so.

Additionally, defendants criticize plaintiffs' use of declarations in support of their motion for conditional certification. Signed declarations provide appropriate support for

8

motions such as this; in fact, in Boyle v. Barber & Sons, supra, this Court granted conditional certification based on the affidavit of one former employee.  In this case, there are multiple affidavits from plaintiffs, in addition to deposition testimony of defendants' officers and employees supporting certain of plaintiffs allegations.

Finally, in arguing that the members of the proposed class are not similarly situated, defendants compare the proposed class to a recent case within the Eighth Circuit where conditional certification was denied.  In Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941 (W.D. Ark. 2003), the court denied conditional certification because "unsupported allegations of widespread violations are not sufficient to meet plaintiff's burden."  Further, in Freeman, the court found that determination of exempt status turned on facts and circumstances specific to each employee, making class certification inappropriate. Defendants state that the putative class in the present matter is like Freeman in that putative class members may have had different supervisors giving them different input as to "off-the-clock" work, therefore giving rise to facts and circumstances specific to each employee that would make class certification inappropriate.

However, Freeman is distinguishable from the present matter in that the putative class in Freeman involved approximately 7,000 plaintiffs from Wal-Mart stores across the nation, with different supervisors and different duties.  Here, the putative class is much smaller.  Furthermore, plaintiffs' claim is not only about off-the-clock work; as this Court understands it, plaintiffs' primary claim is that defendants had a company-wide policy classifying all loan originators as exempt employees and not paying those employees overtime pay, which plaintiffs claim is improper under the FLSA.  This Court believes

9

plaintiffs have sufficiently supported their claim (using depositions of NovaStar officials) that the decision to treat all loan originators in all NovaStar offices as exempt employees was a company wide plan implemented at the direction of the company's president. (See Anderson Depo. at 30:10-13.)

Defendants also argue that it would be premature to grant conditional certification at this stage. Defendants note that "The courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 267 (D. Minn. 1991); see also D'Anna v. M/A-COM, 903 F.Supp. 889, 894 (D. Md. 1995) ("[A]n employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense."); H&R Block, Ltd. v. Hoursden, 186 F.R.D. 399, 401 (E.D. Tex. 1999)("[T]his court is mindful that it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation.") Defendants support their position that this class notice would "stir-up" litigation or that this case is a "frivolous fishing expedition" by noting that plaintiff Dodson is also a plaintiff in another wage and hour case pending in Kansas City federal court, where he is also represented by Mr. Hanson, plaintiffs' counsel in this case. Contrary to defendants' belief, just because plaintiff Dodson is a plaintiff in another wage and hour case and represented by the same counsel as in this matter does not mean that plaintiffs' claims in this lawsuit do not have merit. Furthermore, from the support plaintiffs have provided in their motion, plaintiffs' claims do not appear to be frivolous or unsupported as those in the cases cited by defendants.

Defendants also argue that conditional certification would be improper in this matter

10

because most, if not all, of NMI's loan originators have signed arbitration agreements. In particular, each agreement states that "[a]ny controversy, dispute or claim" between the employees and NMI "shall be settled by binding arbitration, at the request of either party." (See Ex. B. to Doc. No. 112). Defendants also note that none of the arbitration agreements provide for classwide arbitration; instead, the agreements limit the arbitral forum to "the county and state in which the branch is located." (See Ex. B. to Doc. No. 112). While defendants note that NMI has not moved to compel arbitration of plaintiffs' claims, defendants state it could do so in the future. Defendants state that, generally, courts exclude employees who have signed arbitration agreements from the class description and class notice, citing Livingston v. Assocs. Fin., Inc., 339 F.3d 553, 559 (7th Cir. 2003); Champ v. Siegel Trading Co., No. 89C7148, 1990 WL 19984, at *7 (N.D. Ill. Feb. 27, 1990); and Sanders v. Robison/Humphrey/Am. Express, Inc., Nos. CIV.A.C 85-172A, CIV.A. C85-1586A, CIV.A. C 85-1891A, 1986 WL 10096 (N.D. Ga. July 8, 1986), rev'd in part on other grounds, affirmed in part, 827 F.2d 718 (11th Cir. 1987).

As discussed by plaintiffs, however, the cases cited by defendants are distinguishable. First of all, in each of the above-cited cases, the court was charged with determining whether the case was able to be certified as a Fed. R. Civ. P. Rule 23 class action. An examination of whether a class should be certified under Rule 23 follows much different standards than an examination of whether a collective action should be conditionally certified under the FLSA. Also, the defendants in the above-cited cases had moved to compel arbitration at or about the same time the plaintiffs in those cases had moved for certification of a class action. In the present matter, defendants have not moved to compel arbitration at all, although the case has been pending for over a year. Plaintiffs note that courts have certified collective actions even though putative class members have executed arbitration agreements. See Villatoro v. Kim Son Restaurant, 286 F.Supp.2d 807, 808 (S.D. Tx. 2003) (wherein the Court refused to address arbitration issues in ruling on the motion

11

for conditional certification holding that "these objections, go to . . . the forum in which these claims ultimately should be resolved, not whether notice to potential claimants should be given.") In Villatoro, the court granted plaintiffs' motion for conditional certification, and indicated that once the identity of the class members had been determined, it would then consider arbitration issues. Id. The Court agrees with the Villatoro court's handling of this issue; if defendants choose to move to compel arbitration of certain claims, the Court will consider whether the claims are arbitrable at that time.[4]

Finally, defendants argue that there are problems with plaintiffs' proposed notice. However, as noted by plaintiffs, plaintiffs did not attach a proposed notice to the pending motion. Therefore, the Court finds defendants arguments with respect to the form and content of the notice to be premature.

Therefore, given defendant's and plaintiffs' representations at this point in the case, plaintiffs have met their burden to show that conditional certification is proper in that they have demonstrated that there is a group of similarly situated employees who are victims of a single decision, policy and plan respecting denial of proper overtime compensation. Plaintiffs' motion for conditional certification of a collective action (Doc. No. 78) is **GRANTED.**[5] The opt-in class will consist of all current and former loan originators who were employed by defendants NMI and/or NFI from June 2001 to June 2004.

**IT IS FURTHER ORDERED** that defendants provide plaintiffs with names and current or last known addresses and telephone numbers for each such current or former employee on or before **November 17, 2005.**

---

[4]The Court notes that plaintiffs have argued that defendants actions in defending this lawsuit for over a year constitute a waiver of the arbitration agreements. Again, this Court will make a decision on that issue only if defendants move to compel arbitration.

[5]However, nothing in this Order shall be construed so as to deny defendant its right to move to de-certify the class after completion of discovery.

12

**IT IS FURTHER ORDERED** that plaintiffs shall provide to the Court and defense counsel a proposed Notice and Consent to Join Form on or before **November 17, 2005**.

**IT IS FURTHER ORDERED** that defendant will be given ten days following receipt of the proposed Notice and Consent to Join Form in which to make any objections to the proposed Notice and Consent to Join Form.

**IT IS SO ORDERED.**

/S/FERNANDO J. GAITAN, JR.
Fernando J. Gaitan, Jr.
United States District Judge

Dated: November 8, 2005
Kansas City, Missouri